UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

_____

**ERIK SALAIZ,**

          **Plaintiff,**

      **v.**

**CORDOBA LEGAL GROUP PLLC.**, a Florida
Professional Limited Liability Company and
**ALFREDO CORDOBA**

          **Defendants.**

_____

§
§
§
§
§
§
§
§
§
§
§
§
§

**Case No. 3:24-cv-00085-FM**

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2.     Defendant CORDOBA LEGAL GROUP PLLC. ("CLG") is a professional limited liability company organized and existing under the laws of Florida and can be served via its registered agent Alfredo Cordoba at 102 NE 2nd Street, #252, Boca Raton, Florida 33432.

3.     Defendant ALFREDO CORDOBA ("Cordoba") is a natural person, resident of Florida, and Chief Executive Officer of CLG and can be served at 102 NE 2nd Street, #252, Boca Raton, Florida 33432.

4.     Unnamed Party EASY FINANCE USA ("Easy Finance") is an unidentified telemarketing company that makes solicitation phone calls at the instruction, direction, and oversight of Defendant Cordoba.

### NATURE OF ACTION

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

6.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant CLG's sellers and or agents placed illegal unauthorized telemarketing phone calls to Plaintiff's personal cell phone in violation of the TCPA and Texas Business and Commerce Code 302.101.

7.      Plaintiff never consented to receive any of the alleged phone calls.

## JURISDICTION AND VENUE:

8.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

9.      This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

10.      This Court has personal jurisdiction over the Defendants' because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

11.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants' regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

12.    In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

21.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22.    The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23.    Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

24.    Plaintiff successfully registered his personal cell phone (XXX) XXX-0898 on the National Do-Not-Call Registry on August 19, 2021, which was more than 31 days prior to receiving the alleged calls.

25.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

26.    The Plaintiff's telephone number 0898 is a residential number.

27.    The Plaintiff's telephone number 0898 is used for personal purposes and is not associated with business.

28.    Defendant CLG is a law firm owned and controlled by Defendant Cordoba.

29.    Defendant CLG offers consumer debt relief services.

30.    Defendant CLG is barred by ethics from making direct solicitation phone calls to consumers with whom no preexisting relationship exists.

31.    Defendant Cordoba contracted with Easy Finance to make solicitation phone calls on behalf of CLG because CLG is barred from making these calls themselves and in an effort to evade ethics violations.

32.    Defendant Cordoba oversaw the hiring and training of Easy Finance to make solicitation calls on behalf of CLG.

33.    Defendants CLG and/or Cordoba provide Easy Finance with calling lists to thousands of consumers' residential phone numbers.

34.    Defendants CLG and/or Cordoba instruct Easy Finance to call the phone numbers on the calling lists provided by Defendants.

35.    Defendants CLG and/or Cordoba provides Easy Finance with qualifications a consumer must meet to qualify for Cordoba's debt relief services.

36.    Defendant Cordoba authorizes Easy Finance to act as CLG's agent by instructing Easy Finance on how much to charge a new client and sending the new client a retainer agreement to sign on behalf of Defendant CLG.

37.    Easy Finance's is a fictitious name being used and Plaintiff is unaware of their true identity however will be revealed during discovery.

38.    Plaintiff sued Defendant Cordoba in the past for both TCPA and Texas Business and Commerce Code 302.101 violations *Salaiz v. DEBT USA LLC et al*, No. 3:22-cv-004009-DCG (W.D.TX., Nov. 04, 2022).

39.    Defendants CLG and/or Cordoba have generated substantial profits by ignoring the TCPA violating phone calls of Easy Finance and turning a willful blind eye.

40.     Plaintiff received at least five (5) unauthorized calls from October 27, 2023, to January 17, 2024, to his cell phone ending in 0898 from Easy Finance soliciting CLG's services ("the calls").

41.     **Call #1 –** On October 27, 2023, at 1:55 PM, Plaintiff received a call to his personal phone 0898 from Easy Finance from phone number (601) 282-7037.

42.     **Call #2 –** On October 31, 2023, at 12:39 PM, Plaintiff received a call to his personal phone 0898 from Easy Finance from phone number (267) 933-0682.

43.     **Call #3 –** On November 6, 2023, at 2:08 PM, Plaintiff received a call to his personal phone 0898 from Easy Finance from phone number (908) 350-6454.

44.     Plaintiff answered calls 1-3 and was greeted by agents from Easy Finance soliciting debt relief services. Plaintiff was not interested and disconnected each call.

45.     **Call #4 –** On November 8, 2023, at 10:04 AM, Plaintiff received a call to his personal phone 0898 from Easy Finance from phone number (505) 388-0973.

46.      Plaintiff answered and again was greeted by an agent from Easy Finance soliciting debt relief services.

47.     Plaintiff became annoyed and frustrated by the calls and feigned interest in debt relief services for the sole purpose of identifying who was responsible for the calls.

48.     The agent from Easy Finance asked Plaintiff qualifying questions provided by CLG regarding Plaintiff's debt.

49.     The agent from Easy Finance then transferred Plaintiff to another agent from Easy Finance named Eric.

50.     Eric asked Plaintiff more qualifying questions and solicited Plaintiff for a debt relief program on behalf of Defendant CLG.

51.    Plaintiff received an email from Eric that contained a retainer agreement from Defendant

CLG for Plaintiff to sign. *See Exhibit A*.

52.    On or about November 9, 2022, Plaintiff sent an email to Defendant Cordoba to

admin@cordobalegal.com advising Cordoba of unauthorized telemarketing calls Plaintiff

received to his cell phone 0898 from Easy Finance on behalf of Defendant CLG.

53.    Plaintiff received a read receipt to the email he sent Defendant Cordoba.

54.    Defendant Cordoba was on notice that Easy Finance was making unauthorized

telemarketing calls to Plaintiff's cell phone 0898 on behalf of Defendant CLG.

55.    Defendant Cordoba was well aware Plaintiff was not interested in Defendant CLG's debt

relief services.

56.    Defendant Cordoba continues to use Easy Finance to tele solicit CLG's debt relief

services.

57.    **Call #5 –** On January 17, 2024, at 10:12 AM, Plaintiff received a call to his personal

phone 0898 from Easy Finance from phone number (223) 266-1069.

58.    **Call #5 –** The call rang once and went straight to voicemail.

59.    **Call #5 –** The voicemail contained a prerecorded voice message soliciting debt relief

services.

60.    **Call #5 –** The prerecorded voice message does not identify Easy Finance or CLG.

61.    **Call #5 –** The prerecorded voice message left a call back number for Plaintiff to call

(213) 418-9338.

62.    On January 31, 2024, Plaintiff called the call back number (213) 418-9338 left in call five

for the sole purpose of identifying who was responsible for the illegal robocall.

63.    Plaintiff was connected to an agent with Easy Finance named Gina.

64.     Gina asked Plaintiff a series of qualifying questions regarding Plaintiff's debt and solicited Plaintiff for a debt relief program on behalf of Defendant CLG.

65.     Plaintiff received an email from Gina that contained a retainer agreement from Defendant CLG for Plaintiff to sign. *See Exhibit B.*

66.     On or about September 6, 2022, Defendant CLG changed their legal entity name from Cordoba Legal Group LLC to Cordoba Legal Group PLLC. *See Exhibit C.*

67.     Plaintiff did not give his prior express written consent to receive any of the alleged calls.

68.     None of the alleged calls were made to Plaintiff for emergency purposes.

69.     Defendant CLG's agents and/or telemarketers employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statues.

70.     Defendants CLG and Cordoba have knowledge of and has adopted and maintained TCPA violations as a sales strategy.

71.      Defendant Cordoba knew full well that Easy Finance was calling and harassing consumers in an attempt to procure business on behalf of the Defendant CLG.

72.     Defendant Cordoba refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendants CLG and Cordoba financially.

73.     Defendant CLG is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations either directly or through its telemarketer Easy Finance. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant CLG's registration.

74.     Defendant CLG doesn't qualify for an exemption under § 302.053.

75.     Upon information and belief, Defendant Cordoba did not train Easy Finance who

engaged in telemarketing on behalf of Defendant CLG, on the existence and use of Defendant CLG's internal do not call policy as Easy Finance failed to recognize Plaintiff's personal cell phone 0898 is registered on the National Do-Not-Call Registry.

76.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

77.     The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## <u>VICARIOUS LIABILITY OF DEFENDANTS CLG AND CORDOBA FOR THE ACTIONS OF EASY FINANCE</u>

78.     Defendants are vicariously liable for the telemarketing calls that generated the lead on their behalf.

79.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

80.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

81.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

82.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

83.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

84.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

85.    To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

86.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

87.     Defendants are legally responsible for ensuring that Easy Finance that makes telemarketing calls on behalf of Defendant CLG comply with the TCPA when so doing.

88.     Defendants knowingly and actively accepted business from Easy Finance that originated through illegal telemarketing.

89.     Defendants knew (or reasonably should have known) that Easy Finance was violating the TCPA on their behalf but failed to take effective steps within their power to force the Easy Finance to cease that conduct.

90.     By hiring a company to make calls on their behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

91.     Moreover, Defendants maintained interim control over the actions of Easy Finance.

92.     For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from Easy Finance.

93.     Furthermore, Defendants had day-to-day control over the actions of Easy Finance, including the ability to require them to respect the National Do Not Call Registry.

94.     Defendants also gave interim instructions to Easy Finance by providing lead-qualifying instructions and lead volume limits.

95.     Defendants donned Easy Finance with apparent authority to make the calls at issue. Thus, Easy Finance pitched Defendant CLG's debt relief services in the abstract.

96.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

97.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

98.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

99.    Easy Finance transferred customer information, including Plaintiff's contact information, directly to CLG. Thus, Easy Finance had the "ability . . . to enter consumer information into CLG's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

100.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

101.    Defendants are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when Easy Finance solicited Plaintiff for a debt relief services on behalf of Defendant CLG.

## DEFENDANT CORDOBA IS PERSONALLY LIABLE

102.    Defendant Cordoba refuses to take any action to stop or curtail the unlawful sales

practices and illegal robocalls because these practices benefit Defendant Cordoba financially

when BLC signs up new clients that are approved for ERC tax credits.

103.    Defendant Cordoba personally participated in the calls alleged herein because Defendant

Cordoba hired Easy Finance to make telemarketing calls to consumers and act as CLG's

agent.

104.    Defendant Cordoba personally directed the phone calls be made and oversaw the

telephone solicitation campaign.

105.    Defendant Cordoba was intimately involved in every aspect of the telephone solicitation

campaign for his financial gain.

106.    "If the officer directly participated in or authorized the statutory violation, even though

acting on behalf of the corporation, he may be personally liable.  See *United States v*

*Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd Cir.1985)

107.    The "well-settled" tort rule provides that "when corporate officers directly participate in

or authorized the commission of a wrongful act, even if the act is done on behalf of the

corporation, they may be personally liable."  *General Motos Acceptance Corp. v. Bates*, 954

F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the

general [tort] rule is that the officer to be held personally liable must have some direct,

personal participation in the tort, as where the defendant was the 'guiding spirit' behind the

wrongful conduct….or the 'central figure' in the challenged corporate activity."  *Mozingo v.*

*Correct Mfg. Corp*., 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho*

*Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1ˢᵗ Cir.1980)) (Citing *Texas v. American Blastfax,*

*Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

108.    Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be
> personally liable under the TCPA if he had direct, personal participation in or
> personally authorized the conduct found to have violated the statute, and was not
> merely tangentially involved.  Individuals who directly (and here, knowingly and
> willfully) violate the TCPA should not escape liability solely because they are
> corporate officers.  As the State persuasive argues, to hold otherwise would allow the
> individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
> repeat their conduct.  Congress surely did not intend to permit such a result in passing
> the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
> "central figures" behind the TCPA violations.  They were the two persons who
> controlled all of Blastfax's day-to-day operations.  They both had direct, personal
> involvement in and ultimate control over every aspect of Blastfax's wrongful contuct
> that violate the TCPA, and/or directly controlled and authorized this conduct.  And
> they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg
> and Michael Horne had good reason to believe they were running a business that
> violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued
> to direct their company to send unsolicited intrastate fax advertisements.  This is fare
> more than a simple derivative liability case.  Accordingly, the Court *899 holds
> defendants Greg and Michael Horne are jointly and severally liable with Defendant
> Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax,
> Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

109.      The Same Court held that corporate officers were also personally liable for DTPA
          violations

> The State contends Greg and Michael Horne are personally liable for any DTPA
> damages because they were solely responsible for the violating conduct…..For the
> same reasons discussed in finding the individual defendants personally liable under
> the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37
> (Tex. Civ. App.-Houston [1ˢᵀ Dist.] 1985, no writ) (finding personal liability for
> corporate officer in DTPA misrepresentation claim, based on general rule that "a
> corporate agent knowingly participating in a tortious of fraudulent act may be held
> individually liable, even though he performed the act as an agent for the
> corporation……Accordingly, the Court finds defendants American Blastfax, Inc.,
> Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages

for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001

110.     At all times material to the Complaint, acting alone or in concert with others, Defendant Cordoba has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant CLG including the acts or practices set forth in this Complaint.

111.     Defendant Cordoba is the principal director and operator of Defendant CLG, controls the day-to-day operations of Defendant CLG and directed Easy Finance to make TCPA violating phone calls to solicit dent relief services on behalf of Defendant CLG.

112.     Defendant Cordoba knowingly and willfully ignores the law. These violations are the direct result of the instructions Defendant Cordoba has given to Easy Finance.

113.     Defendant Cordoba is not merely a bystander and is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

114.     Defendant Cordoba is well aware his conduct violated the TCPA and refused to alter his behavior.

115.     Defendant Cordoba is the sole director of Defendant CLG and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Cordoba has taken no steps to stop the behavior because the behavior benefits Defendants Cordoba and CLG financially.

116.     Defendant Cordoba should be held jointly and severally liable for TCPA violations because he actually committed the conduct that violated the TCPA and/or he actively oversaw and directed this conduct.

117.    Defendant Cordoba should be held liable because to do otherwise would simply allow

him to dissolve Defendant CLG and set up a new corporation and repeat his conduct.  This

would result in the TCPA being unenforceable.

## THE TEXAS BUSINESS AND COMMERCE CODE 305.053

118.    The Texas Business and Commerce code has an analogous portion that is related to the

TCPA and was violated in this case.

119.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

120.    The actions of the Defendants violated the Texas Business and Commerce Code 302.101

by authorizing Easy Finance to place solicitation phone calls to a Texas resident on behalf of

Defendants without having a registration certificate and bond on file with the Texas Secretary of

State.

121.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302."  Tex. Bus. & Com. Code §

302.303.

122.    The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

123.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

124.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

125.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

126.    The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

127.    Plaintiff has been annoyed, harassed, and irritated by unauthorized telemarketing calls placed to him on behalf of Defendants.

128.    The calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

129.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

130.    Defendants telemarketer and/or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least one (1) time by placing a non-emergency telemarketing call to Plaintiff's cellular

telephone number using an artificial or prerecorded voice message without his prior express written consent.

131.    Plaintiff was statutorily damaged at least one (1) time under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone call described above, in the amount of $500.00 per call.

132.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

133.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their telemarketer and/or agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an artificial or prerecorded voice message and/or without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))
### (Against All Defendants)

134.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

135.    Defendants telemarketer and/or agents called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

136.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

137.    Plaintiff was further statutorily damaged because the Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

138.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### (Violations of The Texas Business and Commerce Code 305.053)
### (Against All Defendants)

139.    Plaintiff incorporates the foregoing allegations as if set forth herein.

140.    The foregoing acts and omissions of Defendants telemarketer and/or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq.

141.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

142.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FOUR:

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (Against All Defendants)

143.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

144.    Defendants telemarketer and/or agents made at least five (5) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

145.    As a result of Defendants telemarketer and/or agents violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

146.    As a result of Defendants telemarketer and/or agents violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by the Defendants violates the TCPA and Texas state law;

C.    An injunction enjoining the Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation and Individual for one (1) call.

E.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation and Individual for five (5) calls.

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation and Individual for five (5) calls.

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation and Individual for five (5) calls.

H.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

I.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity

J.      Such further relief as the Court deems necessary, just, and proper.

March 13, 2024,                    Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
6320 Navajo Ave
El Paso, Texas 79925
915-490-0898
Salaiz.ep@gmail.com